UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| **In re Acetaminophen – ASD-ADHD Products Liability Litigation** | No. 24-2594 |

## MOTION TO CONSOLIDATE APPEALS

To facilitate judicial efficiency and consistency, Plaintiffs-Appellants move to consolidate the above-captioned appeal with Appeal Nos. 24-916, 24-1121 and 24-2360 pursuant to Federal Rule of Appellate Procedure 3(b). The appeals all implicate the same legal issues and arise out of the same facts. Each of the appeals arise from the same multidistrict litigation, *In re Acetaminophen – ASD-ADHD Products Liability Litigation*, No. 22-md-03043 (S.D.N.Y) ("*In re Acetaminophen MDL*"), which includes hundreds of actions alleging that makers of acetaminophen failed to warn about the risk of Autism Spectrum Disorder ("ASD") and/or Attention-Deficit/Hyperactivity Disorder ("ADHD") to children exposed to acetaminophen in utero. The consolidated Appeal Nos. 24-916, 24-1121, and 24-2360 stem from the District Court's Rule 702 exclusion of Plaintiffs' five general causation experts ("December 18 Order"). The above-captioned appeal arises from the District Court's exclusion of Dr. Roberta Ness, an expert who, in Defendant-

Appellants' view, offered a mere "repackaging [of] all five previously excluded opinions" with "the same flaws" as the earlier experts. MDL Dkt. 1461 at 1, 4.

Following expert discovery and briefing, the District Court excluded Dr. Ness for many of the same reasons it had excluded the earlier plaintiffs' experts. MDL Dkt. 1494. In reaching that decision, the District Court repeatedly cited its December 18 Order to support its interpretation of the scientific evidence, *see, e.g.*, *id.* at 30, 78, and repeatedly compared purported flaws in Dr. Ness's opinion to those it identified in the earlier experts' opinions, *see, e.g.*, *id.* at 75–76, 81. Following that order, the District Court entered summary judgment in favor of Defendant-Appellees and rejected Plaintiff-Appellees' argument that there was sufficient admissible general causation evidence in the form of prior statements and publications of one of Defendants' general causation experts. MDL Dkt. 1497. That expert's same statements and publications are at issue in Plaintiff-Appellees' opening brief in the consolidated appeals of 24-916, 24-1121, and 24-2360. Appellants' Br. at 18, 31-32, 55-56, Appeal Dkt. 118.1.

The District Court's Rule 702 Order excluding Dr. Ness and subsequent Summary Judgment Order concern the same legal and factual issues raised in the consolidated appeals of 24-916, 24-1121, and 24-2360. It would thus serve "equity and judicial economy," for the appeals to be consolidated and for the same panel to oversee the issues. *Chem One, Ltd. v. M/V RICKMERS GENOA*, 660 F.3d 626, 642

2

(2d Cir. 2011). In short, because the same or similar legal questions permeate all of the appeals and the same scientific evidence is at issue, it will ensure judicial efficiency to consolidate Appeal No. 24-2594 with Appeal Nos. 24-916, 24-1121, and 24-2360.[1]

## BACKGROUND

On October 5, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated all pending actions against acetaminophen marketers alleging that prenatal exposure to acetaminophen caused ASD and/or ADHD. MDL Dkt. 1. The JPML found "that these actions involve common questions of fact," namely, "the issues concerning general causation, the background science, and regulatory history will be substantially the same in all actions." *Id.* at 1–2. In addition, the JPML correctly predicted that "all defendants are likely to assert the same preemption defense in each action." *Id.* at 2. It specifically rejected Defendants' arguments that "common factual questions are lacking." *Id.* at 2. Given the common issues, the JPML concluded that consolidation into "a single MDL" was "necessary to ensure the just and efficient conduct of this litigation." *Id.* at 3.

Following creation of the MDL, the District Court entered a series of case management and discovery orders that govern all of the parties. For example, the District Court entered an order instructing the parties to "prioritize discovery related

---

[1] Counsel for Defendants-Appellees were notified of this motion by email on November 18, 2024. They oppose the relief requested and intend to file a response.

3

to the issue of general causation." MDL Dkt. 246. Plaintiffs' leadership obtained discovery, including five fact-witness depositions and limited document production, on behalf of all of the plaintiffs. In addition, the District Court directed the parties to "think hard about" engaging FDA, Nov. 17, 2022 Hr'g Tr. 15:16–18, and then took the unprecedented step of inviting FDA to submit a statement of interest on whether "science warrant[s] the addition . . . of any warning" relating to ASD and ADHD, MDL Dkt. 588. The District Court also entered four orders denying defendants' preemption claims, which likewise apply to all parties. MDL Dkt. 145, 589, 601, 804.

After the close of general causation discovery, certain plaintiffs put forth five eminently qualified general causation experts: Dr. Andrea Baccarelli, Dr. Robert Cabrera, Dr. Eric Hollander, Dr. Brandon Pearson, and Dr. Stan Louie. On December 18, 2023, the District Court excluded all five experts based on purported methodological missteps, including combined causation analyses of ASD and ADHD, cherry-picking, and inadequately addressing genetics. MDL Dkt. 1381. The District Court's Order also denied as moot motions seeking to exclude experts proffered by defendants. *Id.* at 5. The District Court entered final judgment, MDL Dkt. 1409, 1442, and 1503, and those plaintiffs appealed. Appeals from that Order are currently pending before this Court. Plaintiffs' opening brief in those appeals highlighted the statements and publications of Defendants' general causation expert,

4

Dr. Faraone, which support plaintiffs' expert opinions. Pls. Br. at 18, 31-32, 55-56. In Defendant-Appellees' brief, they argued plaintiffs' claims are preempted as an alternative ground for affirming the District Court's dismissal of those cases. Defs. Br. 180 at 51-59, Appeal Dkt. 180. Plaintiffs' reply brief in those appeals is due on November 29, 2024.

Certain Plaintiffs direct filed their cases in the *In re Acetaminophen* MDL *after* the December 18 Order. These Plaintiffs sought to submit their own general causation expert, arguing that they were not bound by the earlier-excluded experts and that due process required that they be permitted to build their own evidentiary record. MDL Dkt. 1399. The Court ordered Plaintiffs to file their proposed new expert report by Dr. Roberta Ness. MDL Dkt. 1401. Defendants protested, claiming that Dr. Ness's opinion "simply repackaged the same opinions" and "suffers from the same fundamental methodological defects that led to the Court's exclusion of Plaintiffs' prior experts' opinions." MDL Dkt. 1406 at 1, 2. Nevertheless, the District Court permitted expert discovery and motion practice regarding Dr. Ness. MDL Dkt. 1408.

Dr. Ness's 203-page report directly addressed many of the purported shortcomings the District Court had identified in its December 18 Order. *See, e.g.*, MDL Dkt. 1404 at 27, 51, 54, 82, 94, 107, 149, 177; *see also* MDL Dkt. 1494 at 53 (The District Court noting that Dr. Ness's report "contains passages responsive to

5

[its December 18] Opinion"). But the *Daubert* result was the same: the District Court excluded Dr. Ness for many of the same reasons as it had excluded the earlier plaintiffs' experts. MDL Dkt. 1494. In reaching that decision, the District Court specifically noted the overlapping "factual and procedural background" between its Order regarding Dr. Ness and the December 18 Order. *Id.* at 3. The District Court cited its December 18 Order to support its interpretation of the scientific evidence, *see, e.g., id.* at 30, 78, and to compare purported flaws in Dr. Ness's opinion to those it identified in the earlier experts' opinions, *see, e.g., id.* at 75–76, 81. Defendants' briefing in support of excluding Dr. Ness took the same approach, framing the evidence as "a second bite at the apple," merely "repackaging all five previously excluded opinions" with "the same flaws" as the earlier experts. MDL Dkt. 1461 at 1, 4.

Then, even without Dr. Ness's expert opinion, Plaintiffs argued that there is sufficient admissible general causation evidence in the record to preclude summary judgment. MDL Dkt. 1497. That evidence consisted of publications and prior statements of Defendants' general causation expert, who was not excluded in the District Court's December 18 Order. *See* MDL Dkt. 1381 at 5. The District Court rejected this evidence and entered summary judgment in favor of Defendants. MDL Dkt. 1514. Plaintiffs appealed, with opening briefs to be submitted by January 23, 2025. Appeal Dkt. 31.1.

6

## LEGAL STANDARD

Federal Rule of Appellate Procedure 3(b)(2) permits the Court to consolidate appeals "[w]hen the parties have filed separate notices of appeal." "A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993); *United States v. Amerson*, 483 F.3d 73, 77 (2d Cir. 2007). "In assessing whether consolidation is appropriate in given circumstances, a court should consider both equity and judicial economy." *Chem One, Ltd.*, 660 F.3d at 642 (internal citations and quotations omitted).

## ARGUMENT

Plaintiffs-Appellants' appeal should be consolidated with the other *In re Acetaminophen* MDL appeals for at least three reasons: (1) all of the appeals involve the same legal questions relating to Rule 702; (2) each implicates the same underlying facts, including scientific evidence and regulatory scheme; and (3) consideration of all of the appeals together will ensure judicial efficiency and a consistent disposition.

*First*, Plaintiffs-Appellants' appeal will require the Court to resolve the same legal questions as the other appeals. A primary legal issue in all of the appeals is whether the District Court properly applied Rule 702 when it excluded plaintiffs' experts. Each group of appellants asks the Court to decide the proper scope of the

7

Rule 702 inquiry and the role of a district court in assessing the reliability of the expert's principles and methodologies. In addition, because the District Court's preemption rulings apply equally to Plaintiffs-Appellants, it is likely that Defendants-Appellees will again raise preemption in this appeal. Resolving these legal questions will require review of the same arguments and legal authorities.

*Second*, Plaintiffs-Appellants' appeal will require the Court to consider many of the same factual questions as the other appeals. The scientific literature underlying all of the excluded experts' opinions is almost identical. The discovery produced by Appellees was common to all sets of appellants. Defendants' briefing below characterize Dr. Ness's opinion as a carbon copy of those proffered by earlier experts. *See, e.g.*, MDL Dkt. 1461 at 11 ("Dr. Ness has repackaged many of those opinions [of the earlier experts] and seeks to offer the same flawed causal testimony."). The JPML ordered consolidation of the actions below precisely because they shared these common factual issues. *Cf. Chem One, Ltd.*, 660 F.3d at 642 (consolidating appeals that "arise from the same conjoined multiparty litigation in the District Court" and explaining that "consolidation would be both efficient and equitable for the disposition of the appeals"). The District Court, too, noted these commonalities in its Order excluding Dr. Ness. MDL Dkt. 1494 at 3. In addition, the preemption issue Defendants-Appellees will likely raise also features common

8

factual issues relating to the labels for acetaminophen. These common factual issues warrant consolidation.

*Third*, consolidating Plaintiffs-Appellants' appeal with the other appeals will ensure judicial efficiency and consistent disposition of the issues. Even the single unique issue in Plaintiffs-Appellants' appeal (summary judgment) involves evidence adduced during the first round of expert discovery and at issue in the already-consolidated appeal. Thus, it will undoubtedly be helpful to the panel to understand the full context of Plaintiffs-Appellants' appeal, which can most efficiently be accomplished through consolidation. In addition, particularly because all of the appeals arise from a single MDL and a single district court judge's opinions, consistency in disposition on the common issues is essential to ensuring fairness, eliminating confusion, and reducing a need for additional appellate proceedings. Finally, the appeals involve overlapping defendants and counsel on both sides such that consolidation will likely reduce resources and expenses relating to preparation of appendices and appearance for oral arguments. These circumstances too support consolidation.

## CONCLUSION

Plaintiffs-Appellants respectfully request that the Court enter an Order consolidating the above-captioned appeal with Appeal Nos. 24-916, 24-1121, 24-2360.

DATED: November 22, 2024    Respectfully submitted,

/s/ Ashley Keller
Ashley Keller
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Tel: (312) 741-5222
ack@kellerpostman.com

10

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(d)(2), this document contains 1,959 words, including footnotes. I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Times New Roman 14-pt font.

DATED: November 22, 2024                    Respectfully submitted,

/s/ Ashley Keller
Ashley Keller
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Tel: (312) 741-5222
ack@kellerpostman.com